Good morning. May it please the court, I'm Jan Hanzlick, the attorney for appellant Arthur Flores. The question before this court, I submit, is a relatively simple one in that it relates to one issue. One issue that was decided adversely to Mr. Flores in the district court. And that is, did Mr. Flores withdraw from the conspiracy charged in count number one? The court will recall that there were two counts in the indictment. The first count was a conspiracy count, the second count was a substantive count of theft. The court below acquitted Mr. Flores on count two, but convicted him on count one. The parties have argued quite thoroughly and strenuously that under the Lothian standard, at least it's our argument, that under the Lothian standard of the Ninth Circuit, Mr. Flores did in fact not only make out a prima facie case of withdrawal, but did conclusively show that he had withdrawn from the charged conspiracy. And we would submit that the factual findings of the district court on this issue are clearly erroneous, and thus the case should be reversed and remanded to the district court. Or actually, in the case of insufficient evidence, simply reversed. There is a subsidiary argument, if you will, that we had made out a prima facie case of withdrawal. And at that point in time, at the Rule 29 stage, we believe the judge should have recognized that we had made out a prima facie case and shifted the burden to the government to prove beyond a reasonable doubt that Mr. Flores had not withdrawn. We continue to argue that we had made out a prima facie case and that the judge made an erroneous finding at that time, and that the government should have had that burden to prove that we had not withdrawn beyond a reasonable doubt. We are all familiar with the Lothian test as affirmed in later cases. There are three prongs to that test, and simply stated, although I could argue the first prong about disavowal, I will go to the third prong, which is that the defendant by his definite, decisive, and took definite, decisive, and positive steps to show his disassociation from the conspiracy. We believe that the record supports not only a prima facie case, but is showing that's exactly what Mr. Flores did. Did he do anything to stop concealing the fact that he had improperly received payments prior to his withdrawal? Yes, he certainly did, Your Honor. First, Mr. Flores, in October of 2000, communicated to his employer, to back up a bit, the charge, of course, is theft of railroad retirement benefits, and that is charged to have continued through the end of January 2001. The indictment was returned on the last possible day, according to the government's theory. In October of the year 2000, Mr. Flores communicated to his employer to stop paying him the salary that had been paid to his wife up until that time, hence the theft, and from that point forward, to pay anything, to not pay him the salary, but any further checks that were to be issued by the law firm should come to him personally, Mr. Flores. So what about what he'd already done? I mean, did he come clean as to what he'd been doing up to that point? Well, Your Honor, first of all, as the Court knows, when the Court says come clean, a confession or an admission to authority That's not what I mean, but I don't mean committing criminal wrongdoing, but part of what was charged was he not only was receiving these payments, but he had a, part of what he conspired to do was conceal his activities and retain the proceeds, and those were the elements that the District Court found he had not disavowed. Well, yes, Your Honor, I'm aware of the District Court's findings, and I would point to two elements in the record. First of all, in December of the year 2000, this is after the payments had stopped and after the checks started to come to him personally, Mr. Flores received a form or a communication from the Railroad Retirement Board. He had his lawyer, a lawyer at the law firm that was representing him, respond to the Railroad Retirement Board in I think it was late December of the year 2000 with regard to that form. Then in January of 2001, January 5th to be precise, Mr. Flores himself sent a letter to the Railroad Retirement Board telling him to stop all benefits, that he was going to be employed in the future, and that he no longer would receive or wanted or was eligible to receive any benefits. That stopped him receiving more funds, but didn't do anything towards stopping the retention and concealment of the money he had already gotten. Did he take any actions that went to that prong of the indictment? Well, Your Honor, the actions taken by Mr. Flores with regard to the January 5th letter we submit were those actions to end his participation in the conspiracy across the board. If Mr. Flores is found to have withdrawn as of January 5th, or as we argued below as early as October of 2000, that would end his participation in the conspiracy to steal funds, if you will, or to misappropriate funds, and also to impede the actions of the Railroad Retirement Board. But what about retaining the funds? Well, that, Your Honor, is not a charge that was leveled against Mr. Flores. It is in the indictment right here, one of the three prongs of the objects of the conspiracy. Yes, Your Honor. However, I believe in pretrial proceedings, the government conceded that you couldn't have a theft and a retention, and basically conceded at that point, and that's part of the reason. But if he had returned the funds, would he have been prosecuted under that? Well, certainly, I beg your pardon, certainly if he had acknowledged or confessed or admitted to the Railroad Retirement Board that he had been improperly receiving funds over the period of the charged conspiracy, then he certainly could have been liable for prosecution. But what we're dealing with here is a very unique set of circumstances. The fact of the matter is that the indictment in this case was returned on the very last day possible, according to the government, according to the court below in the agreement. That was on January 31st of 2001. And that resulted in one of the accounts being dismissed. Well, that's correct. The other reason for the dismissal of the second count was the retention as opposed to theft argument. The government charged theft, but then also in the indictment charged retention, and the court below recognized that you couldn't have both. So that was another reason for the second count to have been dismissed. But under this unique set of circumstances, our position is, And I believe the evidence clearly supports the fact that at the very latest, on January 5th of 2001, Mr. Flores took another decisive and positive step to withdraw from the conspiracy, to disassociate himself from the actions of his co-conspirators. The act that is charged in Overt Act No. 8, which was the submission of a form to the Employment Development Department, was something that was not done by Mr. Flores, was not known to him. He didn't participate in it. And in light of the fact that the letter that he submitted was clear and unambiguous with regard to his intentions, the evidence we submit clearly shows that following that date, that is January 5th of 2001, Mr. Flores did not have the intent to participate in the conspiracy. He was not a knowing conspirator following that date. It is important to note that the district court, at trial, or at least in its written findings and conclusions, based its decision, I think it's not incorrect to say, that the district court based its decision on the letter, the January 5th letter, on the fact that the court felt it was misleading, that it failed to discuss or to reveal to the Railroad Retirement Board the past conduct. And therefore, it was a, I guess you could call it sort of a lulling letter. On the other hand, and so the court made a finding that that was an act in furtherance of the conspiracy, rather than an act of withdrawal. However, at the sentencing proceeding, the judge amended his factual findings in a very significant way. And of course, the court knows that at sentencing, it's not a reasonable doubt standard. It's a preponderance of the evidence standard. There was a colloquy about whether or not the obstruction of justice enhancement should apply. And the court on page 22 of the transcript of the sentencing proceeding essentially said that the letter was ambiguous. It made a different finding at sentencing with regard to that letter. The court at trial, or rather at the time that the verdict and judgment were rendered, based its decision on the fact that that letter was misleading and therefore was not an act of withdrawal. But the judge himself at the sentencing hearing found otherwise and found that there was ambiguity in that letter. It's one thing to be guilty of obstruction of justice, and it's another thing to tell somebody less than the whole truth. Those are not coextensive circles. No question about it, Your Honor. Those are two different things. And the test as to whether or not obstruction of justice should apply under the sentencing guidelines is different than a finding of guilt or the finding that was made at trial. However, both of those findings were based upon factual determinations by the court. So at trial or in the judgment, the court made a factual finding that the letter was misleading and that it was intended to deceive. But is, I don't want to take too much time here, but, I mean, is everything that is misleading obstruction of justice? Well, not everything that's misleading is obstruction of justice, but here the court found that it was ambiguous at best and not misleading. In the context of an obstruction of justice enhancement, not in the sense of telling the Railroad Retirement Board that he'd been taking, your client had been taking money from them for months and months. Well, absolutely correct, Your Honor. It was in the context of a consideration of an obstruction of justice enhancement. But once again, that was based upon a factual determination by the judge at the time of sentencing. That factual determination that was made by the judge at that time was different from, completely different from the underlying factual determination that was made by the judge at the time that the verdict was entered. And I would also respectfully submit that the argument that the government has made and the court's citation to the letter at trial is an indication that the government believes and has argued that something more is required beyond the test in Lothian. In other words, is an admission of guilt, is fessing up or coming clean to the Railroad Retirement Board required in order for someone to withdraw from a criminal conspiracy of this sort? Lothian, the Ninth Circuit test, does not require that. The Seventh Circuit test, we could argue about that, I suppose, but we're not in the Seventh Circuit. That's what's advanced by the government. So I would, again, Your Honor, respectfully submit, and I certainly agree with the court, that there's a difference, obviously, between the purpose for the factual finding at trial and the purpose for the factual finding at sentencing. However, they are diametrically opposite of one another, and we would submit that on that basis, because the judge himself found the letter, his earlier finding, found the letter to be ambiguous at best, or a lot of, I do see ambiguity in the correspondence, that there is only one interpretation that is now left for this Court, and that is that that letter was not a lulling letter, was not deceitful, didn't hide, or at least the evidence is unclear, and so the tie has to go to Mr. Flores. We would submit that that... I would cancel your three minutes over your time. Oh, I'm very sorry. Thank you very much. All right. Thank you very much for answering the question, Judge Vogel. Thank you. Good morning. May it please the Court. Assistant United States Attorney Lawrence Middleton, appearing on behalf of Appellee of the United States of America. What I'd like to do is to initially go to one of the final arguments made by defense counsel, and that is that the Court somehow amended its order at the sentencing hearing. Obviously, that's not an argument that the government prepared for because it's not one that was made previously. However, I do believe that it is clear that the Court did not amend its order with respect to its findings at the trial, and in fact, I believe at that sentencing hearing on the issue of obstruction of justice, the government also agreed that the Court should not ultimately apply that enhancement, although it believed that there was some law to support the application of the enhancement. And the government does recall that to a large extent the reason that it believed that the Court should not apply that enhancement had to do with the language of the guidelines themselves. And in fact, it was clear that over time that obstruction guideline, the language in the guideline had changed. So it was unclear as to whether an obstruction was appropriate in that particular case, but at no time did the Court amend the order that it issued after the trial. But doesn't this boil down to whether the finding that the January 5 letter was not a complete withdrawal was clearly erroneous? Your Honor, I believe ultimately that is a large part of the issue, although the government believes that there are other reasons why there's no withdrawal as well. Well, it's both a factual and a legal question, right? That's correct, Your Honor. Next factual and legal question. I believe that's correct, Your Honor. And again, to address that, and I think the parties have spent a lot of time arguing about whether the defendant made a prima facie case, and I believe based on the Court's finding and the Court's order, whether there was a prima facie showing is largely moot at this point, because what the Court found was beyond a reasonable doubt that the defendant did not withdraw. And the Court made that finding based in large part on the very evidence that the defendant argues is evidence of withdrawal, and that is the January 5, 2001 letter. And in that letter, what the defendant clearly did was to tell the Railroad Retirement Board that because he would be employed in February and in future months, he was not going to receive benefits for that time period. And he made it clear that he understood the rules that because he would be earning more than $400 per month, that he wouldn't be entitled to those funds. Now, as the Court found implicit in his letter stating that he would not be, that he would be employed in the future, was that some suggestion that in the past when he was receiving those benefits, that he had been doing it properly and that he was not employed. And so as a result of that letter, he clearly misled the Railroad Retirement Board. The Court also considered the fact that at the time that he wrote that letter, there was an investigation and the Railroad Retirement Board was seeking information from him regarding his benefits. And also the defendant had an affirmative duty to disclose the fact that he was employed when he was receiving those benefits, which he didn't do. So... And that's not what the Court found, because the Court clearly understood the Lothian test. And in fact, the Court went directly to the third prong, which the defense argues, about whether the defendant took definite positive steps to withdraw. And what the Court found was to the extent that this letter is your definite positive steps,  in fact, what it is, is misleading, if not a clear and affirmative misrepresentation. And therefore, it's an act in fervent of the conspiracy. And again, the Court clearly recognized that the conspiracy had three objects. One of those objects was what we refer to as a Klein conspiracy, which is a conspiracy to impede the lawful governmental functions of the Railroad Retirement Board. And the evidence in this case was that one of those lawful governmental functions was the recovery of overpayments. And what we had in this case was a clear history of overpayments. That is, years of the defendant receiving monies that he was not entitled to because he was employed. And the Railroad Retirement Board had an obligation, an affirmative duty to recover those monies. And what the defendant did with this letter was to impede the Railroad Retirement Board in that lawful governmental function, because he misled them into believing that whereas he was going to be employed in the future, he had not been employed in the past. And so what act could the defendant have done that would have constituted a withdrawal from this conspiracy as read in the indictment? Well, it's very clear. One of the things he certainly could have done in this particular case was he could have gone to his employer and communicated to his employer that to the extent that it had to report his wages in the future, it should not report those wages in the name of his wife, which was a large part of the conspiracy and was the way in which they covered up what they were doing. So it didn't require and the court didn't suggest that he was required to go to law enforcement and confess his crimes. But to the extent that he was impeding by concealing his earnings by having it reported in his wife's name, he very easily could have gone to his employer and said, don't do that. And, in fact, the record is very clear that there's no evidence that he did that. And, in fact, the only evidence that he has to support any argument that he somehow withdrew beyond the letter, which, again, the court found was misleading, and that finding is not clearly erroneous on this record. The only other evidence he had was a check ledger. And that ledger showed that there were no salary payments recorded on the ledger for the final quarter of 2000 after the month of October. Unfortunately for the defendant, there is no evidence of any communications between the defendant and the law firm with respect to that ledger. Now, during the course of the briefing, the defendant has made a number of arguments about communications made to his employer. There is absolutely no evidence in the record to support any of that. For instance, the defendant argues that he went to his employer and told his wife, I'm sorry, told his employer to stop reporting the income in his wife's name. There's no evidence in the record of that. No one testified to that effect. There was no correspondence entered into evidence to that effect. There's no evidence that he ever communicated to his employer that the employer should stop reporting the income in his wife's name. He also argues that after the month of October in the year 2000, that any monies that he received were proper reimbursements for expenses. There is evidence that he received monies during that time period. There's absolutely no evidence that it was for reimbursements or expenses. So and even the defendant conceded to some extent that the lack of communications with respect to that ledger is fatal to his argument that it shows withdrawal. What sort of evidence do you think he could have submitted if he'd had someone from the law firm come in and testify? There are a number of things that if in fact there were communications, he could have had someone from the law firm come in and say he told us to stop doing this. There could have been some e-mails, some correspondence. There could be any number of ways he could have shown that he communicated to the law firm that it should take steps to stop reporting the income in his wife's name. But there clearly in this record is no evidence whatsoever that he did that. And in fact to make a prima facie case, you have to have sufficient evidence from which the trier of fact can infer that a fact at issue is in fact present. In this particular context, from the ledger alone, you cannot infer any communication by the defendant to his employee, because obviously we're looking at a conspiracy that involves multiple co-conspirators, including members of the firm. Just as easily could have happened that someone at the firm aware that they were under investigation could have taken it upon themselves to make some changes on the check register without any input from the defendant whatsoever. And that would not indicate definite positive steps on the part of the defendant. So there's absolutely in this record no evidence whatsoever really that the defendant withdrew or disavowed the conspiracy or took definite positive steps. The sole document that he refers on, that he relies on, is the January 5, 2001 letter. And again, when you look at that letter and you read it in context, the district court's finding with respect to that letter really isn't surprising. It's also not surprising given the fact that that letter was offered into evidence not by the defendant, but by the government to show that the defendant did in fact attempt to mislead the Railroad Retirement Board. So just as the government argued, the court found that the letter was misleading. And when you tell the Railroad Retirement Board that you don't want to receive any more payments because you're going to be employed in the future and you know that that employment will affect your right to receive benefits, when at the same time for years you've been doing the exact same thing, then what you're doing is you're misleading them. And essentially what you're saying is, I know you have an investigation ongoing, but hey, you don't have to send me any more benefits because I'm going to be working, so really you don't need to investigate. And I think that's what happened in this case, unless the court had some questions, the government would submit. All right, thank you, counsel.
judges: Wardlaw, Ikuta, Fogel